IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT B. TOBER AND NEIL TOBER, INDIVIDUALLY AND AS TRUSTEE OF THE NEIL S. TOBER REVOCABLE TRUST, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | Case No.   4:23-cv-00278 |
| v. | ) ) | |
| ALAN E. FRELICH, JAMES R. TOBER, AND TOBER INDUSTRIES, INC., | ) ) ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) | |

**PLAINTIFFS' VERIFIED COMPLAINT**

Plaintiffs Robert B. Tober ("Robert Tober") and Neil S. Tober, individually and as trustee of the Neil S Tober Revocable Trust, ("Neil Tober") (collectively "Plaintiffs") bring this action against Defendants Alan E. Frelich, James R. Tober, and Tober Industries, Inc.  As set forth below, separate claims are brought directly against Tober Industries and other claims are brought derivatively against Tober Industries.

**Parties, Jurisdiction and Venue**

1. Defendant Alan E. Frelich ("Alan Frelich") is an individual who resides in St. Louis County, Missouri.  Frelich is a shareholder, director, and the Treasurer of Tober Industries.

2. Defendant James R. Tober ("Jim Tober") is an individual who resides in New York City, New York.  Jim Tober is a shareholder, director, Chairman of the Board and President of Tober Industries.

1

3. Defendant Tober Industries is a corporation organized and existing under the laws of the state of Missouri with its principal place of business located at 600 Mason Ridge Center Dr., Suite 100, St. Louis, MO 63141.

4. Plaintiff Robert Tober is an individual who resides in Naples, Florida, is a citizen of Florida, and for all relevant times has been a shareholder of Tober Industries holding 1,153 shares of common stock, or approximately 11.11% of Tober Industries.

5. Plaintiff Neil Tober is an individual who resides in Naples, Florida and is a citizen of Florida.  Neil Tober is the sole trustee of the Neil S. Tober Revocable Trust, which for all relevant times has been a shareholder of Tober Industries holding 1,152 and 2/3 shares of common stock, or approximately 11.11% of Tober Industries.  Neil Tober individually is also a director of Tober Industries.

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.  The plaintiffs are citizens of Florida, and the defendants are citizens of Missouri and New York. The amount in controversy exceeds the sum value of $75,000.

7. Venue is proper in this Court because Tober Industries is located in this jurisdiction and the actions and inactions that give rise to this action largely occurred or originated from this jurisdiction.

## Background Regarding Tober Industries, Inc.

8. Tober Industries, established in 1917, was a family-owned business.  Although for many years actively engaged in a shoe manufacturing business, by 1990 the company was solely the holder of investment assets.

9. The present assets of Tober Industries consist primarily of a stock portfolio, a property located in Cupertino, CA ("Cupertino Property"), cash, and treasury notes.

10. Historically, Tober Industries was owned by three individuals, representing three branches of a family: Lester V. Tober, Bennet Frelich, and Irwin E. Tober.

11. In February 1990 the shareholders of Tober Industries held what has within the company and family been referred to as the "XYZ Shareholder Meeting." At this meeting, it was determined that while there would be one class of stock, there would be three series: the X Series, the Y Series, and the Z Series, with each family group owning one series. In other words, the Lester Tober family would have one series, the Bennet Frelich family another series, and the Irwin Tober family the final series.

12. As part of the XYZ Meeting, the shareholders also agreed that each series of shares would be entitled to elect one director.

13. The XYZ Meeting also purported to impose a variety of restrictions on transfer, including limiting the number of potential shareholders and limiting stock transfers to other shareholders or to a shareholder's spouse or lineal descendent.

14. The XYZ Meeting also addressed the power of the Board of Directors, including requiring that there be unanimous affirmative votes by the Board of Directors to modify the company's Dividend Policy.

15. After the XYZ Meeting, on or about February 26, 1991, Lester Tober, Bennet Frelich, and Irwin Tober, the then-directors, held an Annual Meeting of Board of Directors. At that meeting they agreed to a Dividend Policy.

16. The Dividend Policy adopted in 1991 provides that:

> With respect to a given fiscal year one hundred percent of the net pre-tax earnings of the Company (excluding capital gains and losses) for the preceding year as determined for Federal Income Tax purposes shall be distributed during such fiscal year as a dividend to shareholders of the Company in an amount not to exceed, however, $34.00 per share, provided that if the net pre-tax earnings of the Company (excluding capital gains and losses) exceed $34.00 per share in such preceding year,

3

said dividend amount for that given year shall be increased by an amount equal to the maximum effective federal and Missouri individual income tax rates on such net pre-tax earnings (excluding capital gains and losses) in excess of $34.00 per share for the respective year for which such earnings of the Company are taxable to its shareholders…."

17. The 1991 Annual Meeting minutes go on the explain the Board of Directors' concern that: "[t]he shareholders and succeeding directors should not feel their hands are tied by the commands of the present board beyond the requirements established for amendment of the Dividend Policy."

18. The 1991 Annual Meeting minutes expressly explain that: "[t]he formula that provides for annual dividends of $34.00 per share was arrived at based on present day circumstances of the Company and the shareholders."

19. The minutes go on to guide future directors: "If the directors have their reasons for modifying the Dividend Policy in accordance with the provisions for amendment thereof, they need not feel constrained by the dividend formula established in these Minutes."

20. The minutes close with explaining: "It is the thought of the present directors that accommodating to these situations and others which are bound to arise must be left to the judgment of succeeding boards of directors."

21. The members of the Board that enacted the Dividend Policy, Lester Tober, Bennet Frelich, and Irwin Tober, are no longer on the Board, and in fact none are still living.

22. The current Board of Directors is composed of Jim Tober, Alan Frelich, and Neil Tober.

23. Now, over 30 years later, despite repeated requests to account for the dramatic changes over that time period, two of the three Directors refuse to consider the new "present day circumstances" and revisit the amount to be distributed annually.  In other words, despite the

4

potential for sound financial growth, the annual dividend paid to shareholders of Tober Industries remains $34 per share, sitting stagnant for over 30 years.

### Disagreement Concerning Management of Tober Industries

24. Neil Tober and his brother Robert Tober have repeatedly and for years requested that the company, which is no longer performing any operations but simply a shell holding "investments," increase the dividends, more actively manage the assets of the company, and distribute cash to shareholders.

25. While the company is supposed to be controlled by a board of three directors, Jim Tober and Alan Frelich have aligned in a manner so as to prevent Neil Tober, or his family, from having any meaningful decision-making authority and have acted in an openly hostile manner, including causing Tober Industries to pursue separate litigation against Neil Tober in Missouri state court.

26. Despite repeated requests to more appropriately invest the assets of Tober Industries, Jim Tober and Alan Frelich have engaged in a course of conduct where stocks are simply held, missing opportunities for growth and for diversification of assets.

27. For example, a comparison of the stock owned by the company in 2014 to what it owned at year-end of 2022 shows that Tober Industries continues to own many of the same stocks it owned in 2014. However, as of December 31, 2014, the company's stock had a "fair value" of $███████████, whereas as of December 31, 2022, the "fair value" was $███████████.

28. The investment portfolio consists of marketable securities, and it is unacceptable that the returns over such an extended period of time are negative.

29.     Rather than appropriately managing the assets of Tober Industries for the benefit of the shareholders, Jim Tober and Alan Frelich have caused the company to hold assets out of a personal interest of avoiding incurring tax liability.

30.     Similarly, for years the company held significant amounts of cash (approximately $3,000,000). Despite having no operations requiring cash reserves, the company neither invested nor distributed these large sums during a time period where interest rates remained at historic lows.

31.     Simply holding cash in such an environment decreases the relative value when inflation is considered.

32.     Both Neil Tober, and his brother Robert Tober, repeatedly asked that the cash be actively invested or distributed to shareholders, but these requests did not result in any action.

33.     Director Jim Tober has even acknowledged the need to invest the cash. For example, in a December 7, 2021, email to Neil Tober, Jim Tober stated: "I do understand your concern about uninvested cash. We've discussed this before but have never acted. At the present time, Tober Industries has approximately $3 million in cash. We need to keep some of that liquid (I'm not sure how much). But let's finally do something with the balance while still minimizing risk."

34.     Jim Tober and Alan Frelich advocated for Tober Industries to maintain the $3,000,000 so that Tober Industries could use the cash to redeem shareholders. In other words, these shareholder/directors withheld cash from other shareholders with the intent to then use that cash to buy the other shareholders' interest in Tober Industries at a discount. In this manner, Jim Tober and Alan Frelich prevented shareholders from having liquidity from their investment in

6

Tober Industries while also trying to leverage that lack of liquidity to force shareholders to redeem their interests in the company at a discount.

35. When expressing that Tober Industries should hold cash for potential redemption, Jim Tober and Alan Frelich were aware that at least Neil and Robert Tober were interested in liquidating their interest in Tober Industries.

36. Although Tober Industries is a company, Jim Tober and Alan Frelich treat its objective like an annuity that simply pays out a set dividend amount with minimal change over a 30-year period.

37. Neil Tober and his brother and fellow shareholder Robert Tober have repeatedly expressed their objections to the decisions being made regarding Tober Industries.

38. Although Plaintiffs have made repeat requests to Tober Industries, Jim Tober, and Alan Frelich to liquidate the company and to properly manage the assets, they have not made a specific demand that Tober Industries commence this litigation, as such a demand would be futile, wasteful, and a useless act because there are no disinterested directors and Plaintiffs would be demanding that directors approve suing themselves.

39. Quite simply, Alan Frelich and Jim Tober would not vote to approve this action.

40. Moreover, given the family dynamics and that Alan Frelich and Jim Tober are representatives of their family on the Board, a demand made to shareholders would also be futile. Each family group owns 1/3 of Tober Industries, and it would be futile to ask Alan Frelich and Jim Tober's family members, who, along with Alan Frelich and Jim Tober, own 2/3 of Tober Industries to approve bringing suit against Alan Frelich and Jim Tober for breach of fiduciary duty.

7

41.     This action is not a collusive one to confer jurisdiction that the court would otherwise lack.

### **Breach of 2012 Agreement**

42.     Prior to the 2012 time frame, there was already a disagreement between the families concerning the management of Tober Industries and the failure to properly invest and distribute assets to shareholders.

43.     In the 2012 time frame, Neil and Robert Tober expressed their disagreement with the investment approach and dividend policy. They advised Alan Frelich and Jim Tober that additional dividends should be paid.

44.     Alan Frelich and Jim Tober opposed this and indicated that they wanted to maintain nominal dividends purportedly to ensure that two then-living family members from the prior generation, Winifred and Cynthia, could continue to receive the equivalent of fixed income from Tober Industries.

45.     Although Robert and Neil Tober continued to maintain that Alan Frelich and Jim Tober's approach was not the best approach or the appropriate approach, a compromise was reached to allow this family accommodation to occur.

46.     Accordingly, Alan Frelich and Jim Tober agreed, individually and on behalf of Tober Industries, that instead of Neil and Robert Tober pursuing dissolution of the company at that time, Tober Industries would extend $1,000,000 loans to Neil and Robert Tober at an interest rate of 2.01%, which would provide liquidity to Neil and Robert.

47.     They also agreed that once Winifred and Cynthia had both passed, shareholders would be given the option to liquidate their interest in Tober Industries at no discount.

48.     This agreement has been reconfirmed on a number of occasions, including in a January 3, 2019, email from Alan Frelich to Mark Hills, Jim Tober, and Neil Tober.  In that email, Alan states: "Shareholder option to liquidate at no discount after the contractual obligations to Winifred and Cynthia have been met and they both are no longer here.  I believe that was what Gary Sarachan requested in connection with the loans, and we accepted.  Until then, the XYZ minutes continue to govern and any Shareholder liquidation is a discretionary negotiation."

49.     As another example of the agreement having been memorialized, in a December 21, 2018, email, Alan Frelich was discussing potential taxes for Tober Industries and stated, "[o]f course, the commitment has been made that shareholders can liquidate their shares in the future at no discount to asset value…"

50.     Winifred and Cynthia have both passed but Alan Frelich, Jim Tober, and Tober Industries refuse to perform the agreement.

51.     On May 9, 2022, counsel for Neil and Robert Tober, sent a letter to Mark Hillis, counsel for Tober Industries, requesting that Tober Industries act in accordance with the agreement and liquidate Neil and Robert Tober's shares at no discount.

52.     Tober Industries has failed to liquidate the shares as agreed.  Further, Alan Frelich and Jim Tober have failed to undertake action to make this liquidation occur, despite being made aware of the request.

53.     Because Tober Industries is merely a shell holding investments, it could be managed in a manner to address all of the shareholders' interests, rather than only those of Alan Frelich and Jim Tober.

54. For the same reasons, Tober Industries is amenable to being dissolved with fair proportions to all shareholders.

55. Plaintiffs incorporate by reference every paragraph set forth herein into each count.

## COUNT I (Breach of Contract)
### (Robert Tober and Neil Tober v. Alan Frelich, Jim Tober, and Tober Industries)

56. As set forth above, Alan Frelich, Jim Tober, and Tober Industries agreed that, following the passing of Winifred and Cynthia, shareholders, including Neil and Robert Tober, would be able to liquidate their shares at zero discount.

57. Winifred and Cynthia have now both passed.

58. Neil and Robert Tober have requested that Alan Frelich, Jim Tober, and Tober Industries perform this contractual obligation.

59. Alan Frelich, Jim Tober, and Tober Industries have refused to liquidate Neil and Robert Tober's shares at zero discount and have breached the contract.

WHEREFORE, Neil and Robert Tober seek specific performance of the contract and damages in an amount that is fair and reasonable. Neil and Robert Tober further request costs, attorneys' fees, prejudgment interest, and any other relief the Court deems is just and proper.

## COUNT II (Alternative Promissory Estoppel)
### (Robert Tober and Neil Tober v. Alan Frelich, Jim Tober, and Tober Industries)

60. Alan Frelich, Jim Tober, and Tober Industries promised Neil and Robert Tober that, following the passing of Winifred and Cynthia, shareholders, including Neil and Robert Tober, would be able to liquidate their shares at zero discount.

61. Neil and Robert Tober relied on this promise to their detriment, including by not pursuing dissolution or litigation concerning the management of Tober Industries at that time and

by agreeing to loans from Tober Industries instead of liquidating their positions in Tober Industries.

62. Alan Frelich, Jim Tober, and Tober Industries understood that Neil and Robert Tober were relying on their promises, and it was understood that Neil and Robert Tober pursued the course of conduct that occurred in reliance on the representations by Alan Frelich, Jim Tober, and Tober Industries.

63. Neil and Robert Tober's reliance on the promise by Alan Frelich, Jim Tober, and Tober Industries was reasonable.

64. The refusal to liquidate at zero discount is a resulting injustice. Alan Frelich, Jim Tober, and Tober Industries should be required to follow through with their promise.

65. Alan Frelich and Jim Tober's refusal to liquidate as promised has made it impossible for Neil and Robert Tober to receive appropriate value for their interest in Tober Industries. Their ownership interest should not be held captive.

66. Additionally, Neil and Robert Tober should not have to redeem their stock at a discount in order to extricate their ownership interest, especially when they delayed liquidating their interest in reliance on the promise made by Tober Industries, Alan Frelich, and Jim Tober.

WHEREFORE, Neil and Robert Tober seek an order requiring Alan Frelich, Jim Tober, and Tober Industries to liquidate Neil and Robert Tober's shares in Tober Industries at zero discount. Neil and Rober Tober further request damages in an amount that is fair and reasonable. Neil and Robert Tober further request costs, attorneys' fees, prejudgment interest, and any other relief the Court deems is just and proper.

## COUNT III (Dissolution Pursuant to Mo. Rev. Stat. § 351.494)
**(Brought by Robert Tober and Neil Tober, as trustee of the Neil S. Tober Revocable Trust)**

67. The Board of Directors of Tober Industries are deadlocked in the management of Tober Industries, and the shareholders are unable to break the deadlock.

68. For years, Neil Tober and Robert Tober have advocated for an increase in dividends, investment of the company's cash, and active management of the company's stock portfolio.

69. All of these requests have been ignored.

70. Additionally, given the three series of stock and the competing family interests, Tober Industries has been deadlocked with regard to the ability to liquidate or redeem any shareholders' stock.

71. Alan Frelich and Jim Tober have established a pattern or practice of voting collectively so as to completely nullify the power of Neil Tober's vote.

72. The conduct of Alan Frelich and Jim Tober irreparably harms Tober Industries, and the business and affairs of the company are not conducted to the advantage of the shareholders.

73. Directors Alan Frelich and Jim Tober have further acted in an oppressive manner by refusing to make decisions focused on growing the business and maximizing shareholder value.

74. Alan Frelich and Jim Tober have ignored the shareholders' requests that stocks be actively managed and invested, and that cash not just sit idle in the company.

75. Instead, Alan Frelich and Jim Tober have focused on a strategy that serves only their own personal interests, such as Alan's interest in future heirs rather than present shareholders.

76. The conduct by Directors Alan Frelich and Jim Tober is also resulting in the misapplication and wasting of corporate assets. Tober Industries has missed many opportunities to grow and to increase shareholder dividends and the company's assets by not properly managing the stock portfolio or the company's cash.

77. Moreover, dissolution is not a difficult process given that Tober Industries merely holds investments.

WHEREFORE, Plaintiffs Neil and Robert Tober request that this Court dissolve Tober Industries, Inc. Neil and Robert Tober further request costs, attorneys' fees, prejudgment interest, and any other relief the Court deems is just and proper.

## COUNT IV (Breach of Fiduciary Duty)
**(Derivatively on behalf of Tober Industries by Robert Tober and Neil Tober (as trustee of the Neil S. Tober Revocable Trust) v. Jim Tober and Alan Frelich)**

78. As directors, Jim Tober and Alan Frelich owe fiduciary duties to Tober Industries and its shareholders.

79. Jim Tober and Alan Frelich have breached their fiduciary duties to Tober Industries and its shareholders by refusing to modify the Dividend Policy, retaining over $3,000,000 in cash for no business purpose but only their own self-interests, by failing to appropriately invest the assets of Tober Industries, and by wasting corporate assets.

80. By failing to actively manage the assets of Tober Industries and/or hire a company to actively manage the assets of Tober Industries, Jim Tober and Alan Frelich have breached fiduciary duties owed to Tober Industries and its shareholders.

81. Jim Tober and Alan Frelich's breaches of fiduciary duty have directly damaged Tober Industries and its shareholders in an amount that exceeds $75,000.

WHEREFORE, Plaintiffs Robert Tober and Neil Tober, as trustee of the Neil S. Tober Revocable Trust, derivatively on behalf of Tober Industries request that the court enter a judgment against Jim Tober and Alan Frelich and award damages to Plaintiffs on behalf of Tober Industries in an amount that is fair and reasonable, for prejudgment interest, for costs and expenses, including attorneys' fees pursuant to Mo. Rev. Stat. Ann. § 355.221, and for such other relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiffs demand a jury trial on all issues triable to a jury.

Dated: March 6, 2023

Respectfully submitted,

**GM Law PC**

By: */s/ David B. Helms*
David B. Helms     #49891(MO)
8000 Maryland Avenue, Suite 1060
St. Louis, MO  63105
(314) 474-1750
(816) 471-2221 fax
Email:  davidh@gmlawpc.com

*And*

Catherine D. Singer    #66231(MO)
(*application for admission forthcoming*)
1201 Walnut Street, Suite 2000
Kansas City, MO 64106
(816) 471-7700
(816) 471-2221 fax
Email:  Catherines@gmlawpc.com

*Attorneys for Plaintiffs*

# VERIFICATION

STATE OF California     )
                        ) ss.
COUNTY OF San Diego     )

Neil S. Tober states that the matters and things stated in the foregoing Verified Complaint are true and accurate according to his best knowledge, information, and belief.

_____
Neil S. Tober

Subscribed and sworn to before me. a Notary Public, on this 04 day March, 2023.

01/08/2027

_____
Notary Public

My commission expires:



WENDY M. VALENTIN-JIMENEZ
COMM. #2433524
NOTARY PUBLIC-CALIFORNIA
SAN DIEGO COUNTY
My Commission Expires
JANUARY 8, 2027

## VERIFICATION

STATE OF _Florida_      )
                        ) ss.
COUNTY OF _Collier_     )

Robert B. Tober states on his own behalf that the matters and things stated in the foregoing Petition are true and accurate according to his best knowledge, information, and belief.

_____
Robert B. Tober

Subscribed and sworn to before me, a Notary Public, on this _28_ day _Feb._, 2023.

_____
Notary Public

My commission expires:

_Aug. 28, 2025_

LAURIE BRADY
Notary Public - State of Florida
Commission # HH 132690
My Comm. Expires Aug 28, 2025

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on March 6, 2023, the foregoing document was filed with this Court's ECF document system.

      /s/ *David B. Helms*
      ***Attorney for Plaintiffs***